Robert L. Levy
H. David Krauss
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
(212) 228-9666
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CINDY MAGUIRE,

                                  Plaintiff,                                        ____ Civ. ____
                                                                      ECF Case

    – against –

                                                                     **COMPLAINT AND**
                                                                       **JURY DEMAND**
ADELPHI UNIVERSITY,

                                  Defendant.
-------------------------------------------------------------------x

        Plaintiff Cindy Maguire, by and through her attorneys Bantle & Levy LLP, for her complaint, alleges as follows:

## NATURE OF THE ACTION

    1.     Cindy Maguire, Ph.D., brings claims for violations of the federal Equal Pay Act, 29 U.S.C. § 206(d), and New York's Equal Pay Act, New York Labor Law ("NYLL") § 194, stemming from Adelphi's unlawful compensation of Dr. Maguire at a rate less than a comparable male employee and for violations of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, stemming from Adelphi's discrimination against Dr. Maguire in her compensation and other perquisites of employment on the basis of her sex.

## JURISDICTION AND VENUE

    2.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

1

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the asserted claims occurred herein.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal law claims.

## PARTIES

5. Plaintiff Cindy Maguire, Ph.D., is an Associate Professor and Director of Art and Art History at Adelphi University ("Adelphi"). From September 1, 2016 until July 1, 2018, Dr. Maguire was the Acting Associate Dean of Adelphi's College of Arts and Sciences (the "College").

6. Dr. Maguire resides in New York, New York.

7. Defendant Adelphi is a private university located in Garden City, New York.

8. In March 2009, Adelphi settled a gender-based pay discrimination lawsuit brought by the U.S. Equal Employment Opportunity Commission ("EEOC") on behalf of a class of female fulltime professors who were paid less than their male counterparts. *See EEOC v. Adelphi Univ.*, 07-CV-4001 (TCP)(ETB). In addition to agreeing to pay more than $300,000, the consent decree required Adelphi to comply with the requirements of the Equal Pay Act and Title VII. To ensure compliance, Adelphi agreed to a three-year period of EEOC monitoring and training on federal employment discrimination laws. A true and correct copy of the consent decree is attached hereto as Exhibit 1.

9. At all relevant times mentioned herein, Adelphi was Dr. Maguire's employer within the meaning of the federal Equal Pay Act, 29 U.S.C. § 203(d); the New York Equal Pay Act, NYLL §§ 190(2) & (3); and the NYSHRL, N.Y. Exec. L.§ 292.

## STATEMENT OF FACTS

*Dr. Maguire Joins Adelphi*

10. Dr. Maguire is a graduate of the University of Kansas (B.A.E., Visual Art Education), California State University, Long Beach (M.A., Art and Art Education), and New York University (Ph. D., Art Education).

11. In or about September 2008, upon receiving her doctorate, Dr. Maguire joined Adelphi with a dual-appointment to the College and the School of Education ("SOE") as an Assistant Professor and Director of Art Education, respectively.

12. Although she initially had teaching and administrative responsibilities for both undergraduate and graduate programs (within the College and the SOE, respectively), in or about September 2011 Dr. Maguire was named Director of the College's Undergraduate Art and Design Education Program.

13. In or about June 2015, Dr. Maguire was granted tenure and promoted to the rank of Associate Professor and Director of Art and Design Education within the College's Department of Art and Art History. As Associate Professor, Dr. Maguire's duties included classroom teaching, research, and service-related responsibilities.

*Dr. Maguire Offered Position of Acting Associate Dean at Adelphi*

14. In or about Summer 2016, Dr. Maguire was recruited for the position of Acting Associate Dean of the College by Dr. Susan Briziarelli, then-Acting Dean ("Dean Briziarelli").

15. Shortly thereafter, Dr. Maguire was offered a one-year position (from September 1, 2016 to June 30, 2017) as Acting Associate Dean of the College.[1]

---

[1] Per her appointment, Dr. Maguire also became Academic Director of Adelphi's Levermore Global Scholars ("LGS") program.

3

16. Per the job description provided her by Dean Briziarelli, a true and correct copy of which is attached hereto as Exhibit 2, Dr. Maguire was to serve as "the senior associate dean and deputy to the dean" of the College.

17. As Acting Associate Dean of the College, Dr. Maguire's responsibilities included program development, overseeing pre-major programs and student advising, college informational and promotional matters, and overseeing faculty advancement and support.

18. Believing that her increased responsibilities merited a commensurate increase to her annual salary, Dr. Maguire engaged in negotiations with Adelphi regarding her compensation.

19. Although Interim Provost and Executive Vice President Samuel L. Grogg ("Provost Grogg") was identified to Dr. Maguire as the decision-maker as to her compensation as Acting Associate Dean, Dr. Maguire was instead forced to negotiate her salary with Dean Briziarelli.

20. Dr. Maguire sought an annual salary of $120,000.

21. In response, Dean Briziarelli informed Dr. Maguire that although Provost Grogg had budgeted up to $120,000 for the position of Associate Dean, he was unwilling to pay Dr. Maguire that amount.

22. After lengthy negotiations with Dean Briziarelli in which she repeatedly relayed Provost Grogg's reluctance to meet Dr. Maguire's salary request, Dr. Maguire ultimately agreed to a salary of $113,000 for the position.

23. At the conclusion of the negotiation of Dr. Maguire's salary, Dean Briziarelli made clear to Dr. Maguire that she would not be eligible to receive any additional perquisites of

employment as Acting Associate Dean, including, significantly, paid time off for work-related conferences.

24. On or about September 1, 2016, Dr. Maguire assumed the position of Acting Associate Dean.

25. Approximately five months later, in or about January 2017, the College hired a second Associate Dean, Dr. Peter West.

26. Like Dr. Maguire, prior to assuming the role of Associate Dean, Dr. West served as an Associate Professor at the College.

27. Dr. West was hired by Adelphi for the position of Associate Dean at an annual salary of $125,000, well above the salary offered to Dr. Maguire and well above the maximum of the purported salary range for that position.

28. Specifically, Dr. West's salary was more than 10% ($12,000) greater than Dr. Maguire's and $5,000 more than the maximum amount Dr. Maguire was told Provost Grogg had budgeted for the position of Associate Dean.

29. Adelphi paid Dr. West a higher salary than Dr. Maguire notwithstanding that Dr. Maguire and Dr. West were employed in the same position and performed the same essential job functions.

30. In their capacity as Associate Dean, both Dr. Maguire and Dr. West performed the following job functions: program development, pre-major programming and advising; student recruitment, overseeing and attending informational, promotional, and recruitment events, and overseeing faculty advancement and support.

31.     In addition, Adelphi paid Dr. West a higher salary than Dr. Maguire notwithstanding that Dr. Maguire's contract specifically provided that she was "the senior associate dean" and that the volume of her responsibilities exceeded those of Dr. West.

***Adelphi Maintains a Pay Disparity into the Second Year of***
***Dr. Maguire's Acting Associate Deanship***

32.     In or about May 2017, shortly before her contract as Acting Associate Dean was due to expire on June 30, 2017, Dean Briziarelli informed Dr. Maguire that Adelphi wanted to renew her as Acting Associate Dean for at least one additional year.

33.     Seeking to bridge the pay gap between herself and Dr. West, in Summer 2017 Dr. Maguire sought renegotiation of her salary for serving as Acting Associate Dean for a second year.

34.     Again, despite Provost Grogg being identified as the ultimate decision-maker regarding compensation, Dr. Maguire was limited to negotiating with Dean Briziarelli.

35.     During these negotiations, Dr. Maguire raised concerns with Dean Briziarelli about being compensated less than her male counterpart, Dr. West.

36.     Dean Briziarelli responded by communicating a number of tepid and non-substantive explanations for that disparity provided to her by Provost Grogg, including contending that Dr. Maguire's position as Acting Associate Dean was only temporary and that the compensation she received was not that of an administrator but rather her faculty salary plus a stipend.

37.     Dean Briziarelli's claims were belied by an email dated July 13, 2016 she sent to Dr. Maguire during negotiations over Dr. Maguire's first-year contract, in which Dean Briziarelli herself had explicitly noted that the salary for the Acting Associate Dean position "will be the normal [Adelphi] salary for that position."

38. Moreover, these rationales were fully debunked by Jane Fisher, Director of Employment, Employee and Labor Relations at Adelphi, who, during a meeting with Dr. Maguire on or about July 5, 2017, informed Dr. Maguire that her "acting" status was not relevant to her compensation, and that she was being paid an administrator's salary, not receiving a stipend over and above her academic salary.

39. The renegotiation of Dr. Maguire's salary continued over the ensuing months, during which time Dean Briziarelli relayed to Dr. Maguire another series of equally specious claims offered by Provost Grogg to explain his reluctance to provide Dr. Maguire pay parity with Dr. West.

40. Provost Grogg's purported rationales for the pay disparity between Dr. Maguire and Dr. West included, without limitation, that: (1) Dr. Maguire was eligible for a raise only if she proved that she was doing more work than provided for in her contract; (2) Dr. Maguire lacked the prior administrative work experience to justify a raise; and (3) Dr. Maguire's request needed to be approved by a salary review committee within Adelphi's Human Resources department.

41. None of these rationales provided Adelphi with a cognizable and legitimate basis for denying Dr. Maguire pay parity with Dr. West.

42. In the first instance, as both Provost Grogg and Dean Briziarelli were fully aware, during the course of her first year as Acting Associate Dean, Dr. Maguire's responsibilities grew to include assessment and advancement of the College's diversity and inclusion efforts.

43. Further, as acknowledged by Dean Briziarelli in July 2017, Dr. Maguire had performed the "lion's share" of the Associate Dean's work during the prior academic year, including taking on work associated with academic operations – one of Dr. West's duties.

44. On or about June 28, 2017, at Dean Briziarelli's recommendation, Dr. Maguire sent Provost Grogg a letter detailing the additional work duties justifying her requested raise.

45. Dr. Grogg failed to respond to that letter.

46. Similarly, as Dean Briziarelli and Provost Grogg were aware, Dr. Maguire had extensive administrative experience, including serving as Program Director in Adelphi's Art Department since 2008.[2]

47. Finally, as confirmed to Dr. Maguire by Maria Birch, Senior Employment Specialist at Adelphi, as of Summer 2017, the salary review committee was not meeting and was to play no role in establishing Dr. Maguire's compensation.

48. After lengthy and extensive communications with Dean Briziarelli throughout Summer 2017, on or about August 25, 2017, a few days prior to the start of the academic year, Dr. Maguire received a contract providing her an annual salary of $120,000.

49. That same day, Dr. Maguire learned that Dr. West was to be paid approximately $128,500, more than 7% more than Dr. Maguire was to receive for performing the same essential job functions.

---

[2] From 2008-2010, Dr. Maguire was Program Director for both Adelphi's undergraduate and graduate art and design education programs. Since 2011, Dr. Maguire has been Program Director for Adelphi's undergraduate art and design program.

***Dr. Maguire Files Complaint with Adelphi Alleging Sex-Based Discrimination by Provost Grogg***

50. Upon information and belief, female professors at Adelphi have been routinely treated less favorably than their male counterparts by Provost Grogg in the terms and conditions of their employment at Adelphi.

51. For example, as noted by Dean Briziarelli in a conversation with Dr. Maguire in or about Fall 2016, Provost Grogg routinely provided financial support for the scholarship efforts of Adelphi's male faculty members in preference to similar efforts by its female faculty members.

52. Dr. Maguire experienced Provost Grogg's discriminatory treatment of female employees of Adelphi first-hand while serving as Acting Associate Dean, including not receiving pay equity with Dr. West.

53. In addition, Provost Grogg consistently resisted Dr. Maguire's repeated efforts to schedule meetings with him during her first year as Acting Associate Dean, including meetings to discuss an upcoming Middle States accreditation visit and the LGS Program.

54. When addressing LGS issues, Provost Grogg reached out to the Program's male Administrative Director rather than communicate directly with Dr. Maguire, a breach of protocol given Dr. Maguire was the Program's Academic Director.

55. In contrast, Provost Grogg regularly met with Dr. West.

56. Not only did Provost Grogg's resistance to meeting with Dr. Maguire deny her guidance and oversight on issues of significant concern to Adelphi, it also denied Dr. Maguire the valuable networking opportunities made available to Dr. West.

57. Moreover, on the one occasion Dr. Maguire was able to arrange a meeting with Provost Grogg (concerning Dr. Maguire's efforts to re-establish Adelphi's relationship with the

American College of Norway as part of her role as Director of the LGS program), he was rude and dismissive, provided no constructive guidance for her initiatives, and undermined her efforts as Academic Director of the LGS program.

58. By contrast, Provost Grogg actively supported Dr. West's initiatives and offered him guidance and support as needed.

59. Seeking to gain redress for Provost Grogg's biased and differential treatment, on or about December 21, 2017, Dr. Maguire filed a complaint with Adelphi against Provost Grogg, alleging that he had discriminated against her on the basis of her sex by treating her less favorably than her male colleagues.

60. Two days later, on or about December 23, 2017, Dr. Maguire discovered that her promotion clock had been stopped, meaning that she was not receiving credit towards her promotion to Full Professor for the 1.5 years she had spent thus far working as Acting Associate Dean.[3]

61. After discovering that her promotion clock had been stopped and frustrated with the lack of pay equity in her role as Acting Associate Dean, Dr. Maguire stepped down as Acting Associate Dean, effective July 1, 2018.

---

[3] Upon information and belief, pursuant to applicable Adelphi policy, an Associate Professor must serve in that role (or in an administrative capacity) for a minimum of five academic years prior to seeking the status of Full Professor. Because the 2015-2016 academic year was Dr. Maguire's first as Associate Professor, per Adelphi rules, she should have eligible to apply for a position as Full Professor at the end of the 2020-2021 academic year.

## FIRST CAUSE OF ACTION
***Unequal Pay in Violation of the Federal Equal Pay Act,
29 U.S.C. § 206(d)***

62. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

63. Adelphi has paid and continues to pay Dr. Maguire wages and benefits that are less than those paid to one or more employees of the opposite sex who were comparably situated.

64. Adelphi's conduct in this regard was willful and/or in reckless disregard to Dr. Maguire's right to equal pay.

65. As a result of Adelphi's conduct, Dr. Maguire has suffered both economic and emotional harm.

## SECOND CAUSE OF ACTION
***Unequal Pay in Violation of
New York Labor Law § 194***

66. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

67. Adelphi has paid and continues to pay Dr. Maguire wages and benefits that are less than those paid to one or more employees of the opposite sex who were comparably situated.

68. Adelphi's conduct in this regard was willful and/or in reckless disregard to Dr. Maguire's right to equal pay.

69. As a result of Adelphi's conduct, Dr. Maguire has suffered both economic and emotional harm.

### THIRD CAUSE OF ACTION
*Unlawful Discrimination in Violation of the*
*New York State Human Rights Law, N.Y. Exec. L. § 296*

70. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71. By paying Dr. Maguire wages and benefits that are less than those paid to one or more comparably situated employees of the opposite sex, and discriminating against her in other terms and conditions of her employment, Adelphi has discriminated against Dr. Maguire on account of her gender in violation of the New York Human Rights Law, N.Y. Exec. L. § 296(a).

72. Adelphi's conduct in this regard was willful and/or in reckless disregard to Dr. Maguire's rights.

73. As a result of Adelphi's conduct, Dr. Maguire has suffered both economic and emotional harm.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant judgment for Plaintiff and that it order and award Plaintiff the following relief against Defendant:

(1) Actual damages in the form of back pay, pursuant to the Equal Pay Act, the NYLL and the NYSHRL;

(2) Liquidated damages, pursuant to the Equal Pay Act and the NYLL;

(3) Compensatory damages for emotional pain and suffering, mental anguish, and humiliation, pursuant to the NYSHRL;

(4) Attorneys' fees, pursuant to the Equal Pay Act, the NYLL and the NYSHRL;

(5) Costs and disbursements;

(6) Interest; and

(7) Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury.

Dated: New York, New York
December 3, 2018

                                            BANTLE & LEVY LLP

By: _____
Robert L. Levy
H. David Krauss
817 Broadway
New York, New York 10003
212.228.9666
*Attorneys for Plaintiff*